UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL POLEN IV,

    Petitioner,

v.

FREDEANE ARTIS[1],

    Respondent.

Case No. 23-10889
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1] AND DENYING MOTION FOR EQUITABLE TOLLING [3]**

Samuel Polen IV filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state-court conviction for possessing and using methamphetamine and operating or maintaining a methamphetamine laboratory. Polen was sentenced to 10–40 years for the operating or maintaining a laboratory offense and lesser concurrent terms for his other offenses. Polen claims that insufficient evidence was presented at trial to sustain his convictions. The warden responds that the petition was untimely filed and that the state court reasonably adjudicated his claim. Polen agrees that his petition was filed after the statute of limitations had expired, but argues that he should be entitled to equitable tolling.

---

[1] The Court substitutes Fredeane Artis for Jeff Tanner, since the proper respondent for a habeas petition filed pursuant to 28 U.S.C. § 2254 is the state officer having custody of the petitioner and Artis is the current warden of the facility where Polen is incarcerated. (*See* ECF No. 11, PageID.49); *see also* Rule 2(a), 28 U.S.C. § 2254.

After careful review, the Court will deny Polen's petition and his motion for equitable tolling.

I.

Polen and his co-defendant, Mark Caplan, were charged with multiple methamphetamine offenses after they were found unconscious in a vehicle that contained the components and ingredients for producing methamphetamine, a jar of partially crystalized methamphetamine oil, and a lockbox containing white powder that tested positive for methamphetamine.

At the joint jury trial, Clare County Deputy Joshua Loudenslager testified that on January 6, 2018, at 3:20 a.m., he was dispatched to investigate a car idling in the middle of the intersection of two rural highways. (ECF No. 12-8, PageID.326–327.) He drove to the location and spotted a black Mercury Cougar in the roadway. (*Id.* at PageID.327.) He walked up to the vehicle and saw two men slumped over in the front seats. (*Id.* at PageID.327–328.) The car was in first gear, but the driver had his foot on the clutch. (*Id.* at PageID.328.) The deputy was unable to rouse the occupants by knocking on the window. (*Id.* at PageID.329.) So he opened the driver's door, cut the ignition, and yelled at the driver, who he identified as Caplan, to wake up. (*Id.* at PageID.329–330.) The man seated in the front passenger seat was later identified as Polen. (*Id.* at PageID.330–331.) While the deputy struggled to get Caplan out of the car, Polen woke up and stepped out of the car. (*Id.* at PageID.332–334.)

The deputy placed Caplan under arrest and then turned to Polen. (*Id.* at PageID.335–337, 343.) He told Polen to empty his pockets, and Polen removed a white

2

pill and plastic tubing. (*Id.* at PageID.343–347.) Another deputy arrived and found a black duffle bag on the floor behind the front seat. (*Id.* at PageID.350.) The bag contained Coleman fuel, empty bottles, rubber tubing, and ice packs. (*Id.* at PageID.350–354.) The vehicle smelled of chemicals. (*Id.* at PageID.357.) After the car was impounded, a small lockbox was found behind the front passenger seat. (*Id.* at PageID.357; ECF No. 12-9, PageID.525, 533–534.) The lockbox contained a small scale, a white powdery substance that tested positive for methamphetamine, needles, and shoestring. (ECF No. 12-9, PageID.526–536, 546–547.) Officers later determined that the car was registered to someone named Tracy McClellan. (ECF No. 12-8, PageID.361.)

Clare County Deputy Aaron Miller testified that he was dispatched to the scene to assist Loudenslager. (ECF No. 12-9, PageID.402.) He put Polen in the back seat of his patrol car. (*Id.* at PageID.403.) Polen was very lethargic, his eyes were bloodshot, his speech was slurred, and he "kept nodding off." (*Id.* at PageID.403–406.) Polen told Miller that a blood test would show that he had methamphetamine, marijuana, and morphine in his system. (*Id.* at PageID.408.) The parties stipulated at trial that Polen tested positive for alcohol, methadone, tramadol, and methamphetamine after he was taken into custody. (*Id.* at PageID.546–547.)

Clare County Deputy Thomas Brown testified that he also responded to the scene. (*Id.* at PageID.418–419.) His job was to assess whether there was a "one-pot" methamphetamine lab in the car that might present a hazard. (*Id.* at PageID.419.) Brown explained in detail the method and ingredients needed to manufacture

methamphetamine. (*Id.* at PageID.420–426.) All the supplies and ingredients needed were present in the car and duffle bag: plastic bottles, Sudafed tablets, cold packs used for their ammonium nitrate, Coleman fuel used as a solvent, lye, a pill grinder, sulfuric acid, pipe cutters, plastic tubing, funnels, coffee filters, and salt. (*Id.*) Deputy Brown also found a mason jar filled with what he believed was methamphetamine oil that had some crystals starting to form. (*Id.*)

Detective Thomas Szidik of the Isabella Sheriff Office, a certified methamphetamine lab responder, was also called to the scene. (*Id.* at PageID.438, 442–443.) He likewise testified about the methamphetamine manufacturing process and corroborated the testimony of Deputy Brown as to the items recovered from the vehicle. (*Id.* at PageID.440–446.) A field test of the liquid found in the mason jar tested positive for methamphetamine. (*Id.* at PageID.447–448.)

Tracy McClellan testified that the Mercury Cougar belonged to her. (*Id.* at PageID.492.) She said that when she woke up on January 6, 2018, she found that her car was missing. (*Id.* at PageID.494.) She had not given anyone permission to use it, though she had previously allowed Caplan to borrow it. (*Id.* at PageID.495.) She called the Sheriff's Department, and they told her that her car was found and had been impounded. (*Id.* at PageID.496.) She denied that anything found in the car belonged to her other than some loose change. (*Id.* at PageID.496–497.)

Caplan testified in his own defense. He said that he and Polen borrowed McClellan's car so they could go to the bar. (ECF No. 12-10, PageID.560–561.) Caplan saw the black duffle bag in the backseat when they got into the car. (*Id.* at

PageID.566–567.) Caplan explained that he fell asleep while driving back from the bar. (*Id.* at PageID.568–569.)

Polen also testified in his own defense, repeating the story of borrowing McClellan's car and falling asleep after leaving the bar. (*Id.* at PageID.601–603.) Polen said he never saw the black duffle bag. (*Id.* at PageID.606.) Nor did Polen know how methamphetamine got in his system. (*Id.* at PageID.618.)

The jury found both men guilty of the charged offenses.

Following sentencing, Polen filed a direct appeal that raised three claims:

I. The prosecution did not present sufficient evidence to sustain defendant's convictions.

II. The sentence imposed on defendant was unreasonable, disproportionate, and an abuse of discretion and violated *People v. Lockridge*, 448 Mich. 358 (2015), thereby requiring a remand to the trial court for resentencing.

III. The trial court erred in requiring defendant to pay attorney fees without first assessing his ability to pay.

The Michigan Court of Appeals affirmed Polen's conviction in an unpublished opinion. *People v. Polen*, No. 348324, 2020 WL 1963988 (Mich. Ct. App. Apr. 23, 2020). Polen then filed an application for leave to appeal in the Michigan Supreme Court that raised the same three claims, but it was denied by form order dated March 30, 2021. *People v. Polen*, 956 N.W.2d 183 (Mich. 2021) (Table).

Polen did not file a petition for writ of certiorari in the United States Supreme Court, nor did he pursue any other post-conviction review in the state courts. Polen then filed this federal habeas petition raising one claim: sufficiency of the evidence.

(ECF No. 1, PageID.5.) Polen did not date his federal habeas petition, but it was filed by the Clerk on April 18, 2023. (*See generally id.*)

## II.

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.

### A.

Prior to addressing the merits, the warden asserts that the petition was filed after the statute of limitations expired. Polen acknowledges that he filed his petition late but claims, in a motion he filed with his habeas petition, that he is entitled to equitable tolling. (ECF No. 3.) The Court disagrees.

In general, a one-year statute of limitation applies to federal habeas petitions filed by state prisoners. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four specified dates, *see id.* § 2244(d)(1). Most commonly, as is the case here, § 2244(d)(1)(A) applies, so the period runs from either the day when the judgment becomes final by the conclusion of direct review or the day when the time for seeking such review expires. Here, the time for seeking direct review of Polen's conviction expired on June 28, 2021, ninety days after the Michigan Supreme Court denied his application for leave to appeal on March 30, 2021. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). So the limitations period expired one-year later, on June 28, 2022. Polen's undated habeas petition was filed with the Court on April 18, 2023, almost ten months late.

Again, Polen's motion for equitable tolling concedes that he filed his petition after the limitations period expired. (ECF No. 3, PageID.16.) Polen asserts, however, that he is entitled to equitable tolling because: (1) there was a COVID-19 outbreak at his prison which restricted access to the law library, (2) he was subjected to a string

7

of prison transfers, separating him from his legal work, and (3) he suffers from mental health issues and partial illiteracy. (*Id.*)

"AEDPA's limitations period is subject to equitable tolling, . . . a doctrine that allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (internal quotation marks and citations omitted). To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). Equitable tolling should be applied "sparingly." *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006). The burden of establishing grounds for equitable tolling rests with the petitioner. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Robertson v. Simpson*, 624 F. 3d 781, 784 (6th Cir. 2010); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003).

Polen fails to establish that he is entitled to equitable tolling. He does not proffer specific facts to support his claim that a COVID outbreak prevented him from timely filing his petition. He does not give dates for the breakout or provide details as to the library restrictions. Moreover, his habeas claim is more factual than legal. It is unclear why he needed significant law library time to put together a petition that argued the facts presented at trial were insufficient to sustain his conviction. Similarly, Polen fails to give details about his prison transfers and the loss of

8

unspecified "legal work." Lastly, even crediting Polen's allegations of mental illness and partial illiteracy, he fails to explain why one year was insufficient to file a one-claim habeas petition—especially when that claim had already been briefed on direct appeal.

Conclusory allegations, such as those provided by Polen, are insufficient to demonstrate entitlement to equitable tolling. *See Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008) ("[A petitioner] bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence."); *Shoening v. Christianson*, No. 21-11955, 2021 WL 4290242, at *3–4 (E.D. Mich. Sept. 21, 2021) (finding that petitioner was not entitled to equitable tolling where he only made general allegations about pandemic-related lockdown and lack of law library access and failed to show that he acted diligently during the one-year period); *United States v. Cherry,* 2010 WL 3958679, at *2 (E.D. Mich. Oct. 8, 2010) (holding that a lack of access to personal legal materials during prison lockdowns, transfers, and segregation are not extraordinary circumstances that warrant equitable tolling); *George v. Winn*, 2016 WL 1182728, at *9 (E.D. Mich. March 28, 2016) (petitioner's conclusory and unsupported claims of mental disability were insufficient to demonstrate entitlement to equitable tolling). In sum, Polen fails to offer specific facts showing that extraordinary circumstances stood in his way of timely filing his petition or that he otherwise acted with diligence.

Finally, the Court is aware that a habeas petitioner may demonstrate entitlement to equitable tolling if he can show that "in light of new evidence, 'it is

more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). But Polen does not make this argument and thus, offers no new evidence to establish his innocence.

So Polen's motion for equitable tolling is denied. As a result, his petition may be dismissed as untimely.

**B.**

But even on the merits, Polen's claim for habeas relief fails.

Polen asserts that the evidence presented at trial was not sufficient to sustain his convictions for operating or maintaining a methamphetamine lab and possession of methamphetamine. (ECF No. 1, PageID.5.)[2] The Michigan Court of Appeals addressed this claim on the merits. The Appeals Court determined that sufficient evidence existed for a rational juror to conclude that Polen had constructive possession of the methamphetamine, materials, and equipment found in the vehicle—thus supporting his conviction for possession and maintaining a lab. *Polen,* 2020 WL 1963988 at *3.

---

[2]Polen does not add any factual detail to support this claim. In his petition, where the form asks for "supporting facts" Polen wrote "See Attachment A." (ECF No. 1, PageID.5.) But the filed petition did not contain any attachments. Looking to his prior filings in state court, it appears Polen argued that no evidence was offered to prove that he knew there were methamphetamine lab materials and equipment in the vehicle, and that at most, the evidence showed that he went to a bar with Caplan in a car borrowed from someone else that happened to contain the contraband. *Polen*, 2020 WL 1963988 at *1. The Court assumes he intended to argue the same here.

10

The clearly established Supreme Court standard governing sufficiency of the evidence claims asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (internal quotations omitted).

On habeas review, Polen faces a steep hurdle. Because both the *Jackson v. Virginia* standard and § 2254(d) apply to Polen's sufficiency-of-the-evidence claim, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Id*. (citations omitted). In other words, it must be the case that the Michigan Court of Appeals' decision on this claim is contrary to or an unreasonable application of *Jackson v. Virginia*. It is not.

In rejecting Polen's claim, the Michigan Court of Appeals began with an explanation of the governing law:

> "A person need not have physical possession of a controlled substance to be found guilty of possessing it." *People v. Fetterley*, 229 Mich. App. 511, 515 (1998). That is, "proof of constructive possession will suffice. Moreover, possession need not be exclusive and may be joint, with more than one person actually or constructively possessing a controlled substance." *People v. Konrad*, 449 Mich. 263, 271 (1995) (citations omitted.) The element of possession "requires a showing of dominion or right of control over the drug with knowledge of its presence and

11

> character." *People v. McKinney*, 258 Mich. App. 157, 165 (2003) (quotation marks and citations omitted). However, "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Lee*, 243 Mich. App. 163, 167-68 (2000). Further, "the defendant's mere presence where the controlled substance was found is not sufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established." *Meshell*, 265 Mich. App. at 622. "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance." *Id*.

*Polen*, 2020 WL 1963988, at *3.

The Court then applied these principles to the evidence presented at trial and found it was sufficient to prove beyond a reasonable doubt that Polen was in possession of the methamphetamine and other drug-related materials found in the car:

> Although defendant's mere presence in the vehicle where methamphetamine and the chemicals and lab equipment used in the manufacture of methamphetamine were found was not sufficient to establish possession, the totality of the circumstances indicates a sufficient nexus between defendant, methamphetamine and the chemicals and lab equipment used in the manufacture of methamphetamine. When the responding deputy initially arrived at the vehicle, he found the vehicle running, in the middle of an intersection, with defendant and another male occupant unconscious. Officers testified there was a chemical odor emanating from the vehicle, and when defendant emerged from the vehicle he appeared to be under the influence of drugs. Defendant told police that his blood would test positive for the presence of methamphetamine, which it did. Evidence existed that defendant had access to the entire vehicle, and that the duffel bag containing several chemicals and methamphetamine lab equipment was within defendant's reach inside the vehicle. Directly behind defendant's seat, police found a small lockbox safe. Inside the safe police found, among other items, a small plastic baggie with a white powdery substance, a scale, needles and a shoestring. Defendant's blood tested positive for methamphetamine.

> Given that possession can be joint, "with more than one person actually or constructively possessing a controlled substance," *Konrad*, 449 Mich. at 271, the jury "could infer that defendant had knowledge of the presence of the controlled substance" in the vehicle, *Meshell*, 265 Mich. App. at 622, as well as knowledge of the chemicals and lab equipment. Hence, viewing the evidence in the light most favorable to the prosecution, *Reese*, 491 Mich. at 139, the State presented legally sufficient evidence that defendant had possession of the materials necessary to manufacture methamphetamine, contrary to MCL 333.7401c(1), and also, legally sufficient evidence that defendant used methamphetamine, contrary to MCL 333.7404. Accordingly, defendant is not entitled to relief on his contention that the State failed to produce legally sufficient evidence to conviction him.

*Polen*, 2020 WL 1963988, at *3.

This determination was not unreasonable. Although there was no direct evidence that Polen used or handled the laboratory equipment or materials found in the car, the loaded duffle bag and lockbox were near where he was seated unconscious and under the influence of methamphetamine and other drugs. The car smelled of chemicals. Plastic tubing and a white pill were in Polen's pocket. The owner of the car reported the car missing and denied owning any of the recovered items. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found Polen guilty of possessing and using methamphetamine and operating or maintaining a methamphetamine laboratory.

Thus, Polen's sufficiency of the evidence claim is both time-barred and without merit.

## IV.

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus (ECF No. 1) and **DENIES** Polen's motion for equitable tolling (ECF No. 3). A separate judgment will follow.

**SO ORDERED.**

Dated: March 14, 2024

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE